UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

*Plaintiff*,

*vs*. Case No. 26-mj-245-amb

MONIQUE GIGNAC-YOCHUM,

*Defendant*.

---

**MOTION TO DISMISS**

Monique Gignac-Yochum, by counsel, moves to dismiss the complaint. She is charged with violating 18 U.S.C. § 611 by unlawfully voting in a federal election as a noncitizen. But the States alone can establish the qualifications of electors for federal elections; Congress can regulate only the time, place, and manner of elections. Because regulating voter qualifications goes far beyond the scope of time, place, and manner regulations and thus exceeds Congress's enumerated powers, § 611 is unconstitutional as applied to Ms. Gignac-Yochum's alleged votes in the State of Wisconsin.

The Court has previously examined the constitutionality of § 611 and concluded that, as applied to a noncitizen voting in a state, the statute exceeds Congress's powers. *See United States v. Tejeda Murillo*, No. 26-mj-004-amb, dkt. no. 45 (Opinion and Order). The Court's conclusions in *Tejeda Murillo* apply in full force here, and the Court's prior ruling and familiarity with the issue allow the analysis to move quickly.

## I. Relevant factual and procedural background.

The relevant facts are straightforward. The government alleges that on November 8, 2022, Gignac-Yochum voted in the 2022 Congressional election, and that on November 5, 2024, she voted in the Presidential election The government further alleges that she wasn't a U.S. citizen when she voted. Thus, on October 23, 2026, the government charged her with unlawfully voting as a noncitizen, in violation of 18 U.S.C. § 611. *See* R.2.

## II. Because Congress is not authorized to establish voter eligibility, § 611 exceeds Article I's enumerated powers.

This motion turns on a key first principle: "In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder." *Bond v. United States*, 572 U.S. 844, 854 (2014). Congress lacks a police power—the "broad authority to enact legislation for the public good"—and "can exercise only the powers granted to it." *Id.* (citation omitted). It can enact only those laws "necessary and proper for carrying into Execution" its enumerated powers, *id.* (quoting U.S. Const. art. I, § 8, cl. 18), and a crime committed within a State "cannot be made an offence against the United States, unless it [has] some relation to the execution of a power of Congress," *id.* (quoting *United States v. Fox*, 95 U.S. 670, 672 (1878)). Section 611 exceeds Congress's authorized powers and is thus constitutionally infirm.

### A. The Constitution's Federal Voter Qualification Clauses do not authorize Congress to establish voter qualifications.

The key text comes from the Voter Qualification Clauses. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 20 (2022) (explaining that a "textual analysis" is the springboard to determine the "normal and ordinary" meaning of a constitutional

provision (citation omitted)). Article I provides that in elections for the U.S. House of Representatives, "the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." U.S. Const. art. I, § 2, cl. 1. The Seventeenth Amendment later applied the same requirement to U.S. Senate elections. U.S. Const. amend. XVII. These constitutional provisions provide that anyone eligible to participate in a state legislative election must also be allowed to participate in that state's federal elections. *See United States v. Classic*, 313 U.S. 299, 314–15, 325 (1941).

By tying federal suffrage to state suffrage, the Framers reserved to the states the power to say *who* could vote in federal elections. Put differently, the Voter Qualification Clauses grant the States the *exclusive* power to determine voter qualifications. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013) (explaining that the Voter Qualification Clauses "explicitly" regulate voter qualifications and "clear[ly]" state what Congress "cannot control" (citation and quotation omitted)); *Tejeda Murillo*, dkt. no. 45 at 8–13 (explaining why the plain text and the history of the Voter Qualification Clauses together show that the "Constitution expressly authorizes the states, and only the states, to set voter qualifications for federal elections").

**B. The immigration power doesn't trump the Voter Qualification Clauses.**

In *Tejeda Murillo*, the government took the position that the immigration power authorizes § 611, but that argument is contrary to the controlling Supreme Court precedent. The Constitution contains affirmative restraints carving out "elements of state sovereignty that Congress may not employ its delegated powers to displace." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 550 (1985). As the Supreme Court has

explained, "[e]ven when the Constitution vests in Congress complete law-making authority over a particular area," an affirmative constitutional restraint limiting federal power prevails. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72 (1996) (concluding that the Eleventh Amendment's sovereign immunity prevailed over a statute enacted under the Indian Commerce Clause). And, like any other enumerated power, the immigration power is subject to important constitutional limitations. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In short, the express language of the Voter Qualification Clauses grants the States the sole power to establish voter qualifications, and "even congressional plenary powers 'cannot override foundational constitutional constraints.'" *Tejeda Murillo*, dkt. no. 45 at 21 (quoting *Haaland v. Brackeen*, 599 U.S. 255, 276 n.3 (2023)).

**C. Section 611 is unambiguously a forbidden voter qualification.**

The doctrine of constitutional avoidance cannot save § 611. The plain text of the statute shows that it is unambiguously a voter qualification, dictating that noncitizens are excluded from the franchise. It cannot be read to contain a secret unwritten element rendering it applicable only in States that already ban noncitizen voting. Put simply, such an interpretation of the statute "reads requirements into the statute that are not there." *Tejeda Murillo*, dkt. no. 45 at 21; *see also Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986) (explaining that the avoidance canon "does not give a court the prerogative to ignore the legislative will in order to avoid constitutional adjudication").

## III. Conclusion.

Prescribing voting qualifications "forms no part of the power to be conferred upon the national government by the Elections Clause." *Inter Tribal Council*, 570 U.S. at 16 (citation and quotation omitted). Because § 611 is unauthorized by the Constitution and usurps powers granted exclusively to the State of Wisconsin, the statute is unconstitutional as applied to Gignac-Yochum. The complaint must be dismissed.

Dated at Madison, Wisconsin this 10th day of November, 2026.

Respectfully submitted,

Monique Gignac-Yochum, Defendant

*/s/ Jonathan Greenberg*

Jonathan Greenberg
Alexander Vlisides
Associate Federal Defender
FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
jonathan_greenberg@fd.org